HICKINBOTHAM *v.* CORDER.

5-1253                                                   301 S. W. 2d 30

Opinion delivered April 15, 1957.

[Rehearing denied May 13, 1957]

714

*Kenneth Coffelt,* for appellant.

*Bailey, Warren & Bullion,* for appellee.

PAUL WARD, Associate Justice. Involved is this question: Under what circumstances will a chancery court enjoin the violation of the penal provision of a city ordinance?

On July 9, 1956 the City of Little Rock enacted Ordinance No. 10206 which contains, among other provisions, the following which are pertinent to this case: Section 1 says it shall be unlawful for any person within the corporate limits of the city, on the first day of the week, commonly called Sunday, to open to the public any grocery store. Section 2 provides that any person violating the above provision shall be deemed guilty of a misdemeanor, and, upon conviction, shall be fined not less than $25 nor more than $100 for each separate offense. It is not denied that appellant, H. V. Hickinbotham, has repeatedly violated the above ordinance, or that he threatens to do so in the future.

On August 17, 1956 appellees, A. B. Corder and some 20 other residents of Little Rock filed a complaint against appellant, H. V. Hickinbotham, making the City of Little Rock a party defendant also.

The essential allegations in said complaint are the following: The plaintiffs are engaged separately and individually in the retail grocery business in the City of Little Rock, being duly licensed, and they bring this action in their own behalf and on behalf of other citizens and residents of said City who are similarly situated or who desire to join therein; The defendant (Hickinbotham) is a resident of said City and is engaged in operating a retail grocery store; The plaintiffs have built up

substantial property rights in their respective businesses; The City of Little Rock has passed the ordinance above mentioned; The plaintiffs, who are included in the terms of said ordinance, having no way to ascertain its constitutionality except to violate its provisions; Plaintiffs believe said ordinance is constitutional, but ask the court to enter a declaratory judgment construing its validity and constitutionality. The complaint further states: The defendant, Hickinbotham, has kept his place open on Sundays in plain and open defiance of the law, having done so over a period of years; Said defendant has indicated that he intends to continue to operate his grocery store on Sunday in the future; Said defendant is a competitor of the plaintiffs and other persons operating grocery stores within the City; That by his said conduct said defendant is causing the plaintiffs injury and damage and is unfairly competing with them in the conduct of their businesses, for which they have no adequate remedy at law. The complaint also states: That the penalty provided for the violation of said ordinance, which is limited by Ark. Stats. § 41-3802, is so small and inadequate as to render said statute ineffectual to protect the rights of the public, and to deter the defendant from openly and defiantly violating the aforementioned ordinance and statute. The prayer was for a declaratory judgment construing the validity and constitutionality of said Ordinance No. 10206, and for an order restraining and enjoining the defendant, Hickinbotham, from further conducting a grocery store within the City of Little Rock on Sunday.

To the above complaint appellant, Hickinbotham, entered a special demurrer on the grounds that the court was without jurisdiction over the subject matter and the parties either to issue a declaratory judgment as prayed for or to enjoin appellant from operating a grocery store on Sunday. After the court had overruled his demurrers appellant, Hickinbotham, answered with a general denial, and also stated that the court was without jurisdiction over the subject matter or the parties.

After hearing the testimony of witnesses on both sides the chancellor, on October 8, 1956, entered a de-

cree in favor of appellees, finding that the court has jurisdiction, and that said Ordinance 10206 is constitutional, and ordering Hickinbotham permanently enjoined from violating the provision of the said ordinance.

Appellant urges a reversal of the chancellor's decree on the grounds that (a) "The trial court was without jurisdiction over the parties or the subject matter", and (b) "The evidence is not sufficient to justify the finding, and judgment of the trial court."

(a) We have reviewed the authorities dealing with questions similar to the one here presented, and have come to the conclusion that the trial court had jurisdiction over both the parties and the subject matter. It is a general rule that chancery courts will not enjoin the commission of a criminal offense when such commission is the only thing involved. It is equally well settled that chancery courts have jurisdiction, in many instances, to enjoin the commission of a nuisance. This court on two different occasions, in *State* v. *Vaughan,* 81 Ark. 117, 98 S. W. 685, and *Meyer* v. *Seifert,* 216 Ark. 293, 225 S. W. 2d 4, has said: "The criminality of the act will neither give nor oust jurisdiction in chancery."

From our analyses of the several decisions of this court it appears that when two elements are present or two conditions exist chancery court will assume jurisdiction to enjoin the commission of a criminal offense. One, when the enforcement of the criminal law will not deter violation. Two, the complaining party or parties must show an injury.

*One.* Inadequacy of the enforcement of criminal laws takes many forms and may be expressed in several different ways. In the *Vaughan* case, *supra,* it was noted that the criminal processes are inadequate to afford relief "from connivance of the officers or other persons." Equity jurisdiction was justified in *State Ex Rel. Attorney General* v. *Karston,* 208 Ark. 703, 187 S. W. 2d 327, this way: "We sum up: by the weight of authority, equity may act to suppress a public nuisance, even though the maintenance of the nuisance is a crime, where there

is alleged in addition to the public nuisance, some facts which show the remedy at law, by prosecution of the criminal, *is inadequate and incomplete to effect relief.* (emphasis supplied)''. The same idea was expressed in different words in the *Seifert* case, *supra,* where the court said: ''It is characteristic of most instances in which injunctions against criminal acts are sustained that the threat of *punishment after the event will not have a very strong deterrent effect upon the offender* (emphasis supplied)''. 52 L. R. A. 79 contains annotations from numerous decisions of other jurisdictions which hold, in varying language, that equity jurisdiction may be invoked where the enforcement of criminal statutes does not afford adequate protection against injury to property rights. Typical of these holdings is the one set forth in *United Traction Co.* v. *Smith,* 187 N. Y. Supp. 377, where we find this language: '' 'While the regular remedy for the prosecution of those who violate the penal laws of the state lies in arrest and punishment, the court will not compel parties whose rights are clear to rely on peace officers to protect them in their enjoyment of those rights. 'There is a preventive as well as a remedial justice'.''

*Two.* In order to invoke injunctive relief in chancery court it is not enough, of course, to show merely that the criminal laws are not being properly enforced, for whatever reason, but it is also necessary to show that the complaining party has been injured in some way, either involving property rights or civil rights. In many cases of this nature coming before this court the complaining party was the State. In such instances it is held that there must be shown an injury of a public nature, such as a public health or public welfare. Such instances are the *Vaughan* case, *supra,* and the *Lyric Theater* v. *State,* 98 Ark. 437, 136 S. W. 174. In the former case the court said: ''. . . if the public nuisance is one touching civil property rights or privileges of the public, or the public health is affected by a physical nuisance, or if any other ground of equity jurisdiction exists calling for an injunction, a chancery court will enjoin, notwithstanding the act enjoined may also be a

crime." In the *Lyric Theater* case, *supra,* it stated that "before an injunction could issue restraining acts constituting a public nuisance, it was necessary that the public nuisance should affect the civil or property rights or privileges of the public, or the public health; . . ." It is of course easy to understand why the injury must be of a public nature where the State itself is seeking the injunction.

If however, as in the case under consideration, certain individuals are seeking injunctive relief it is necessary only that the injury be to their personal property rights. In the *Vaughan* case, *supra,* this court recognized the jurisdiction of chancery court to enjoin the violation of a criminal offense where an injury was threatened to the property rights of individuals. There the court quoted with approval: "The difference between a public nuisance and a private nuisance is that one affects the public at large and the other only the individual. The quality of the wrong is the same and the jurisdiction of the courts over them rests upon the same principle and to the same extent." In the *Seifert* case, *supra,* Myer, on behalf of himself and other property owners, sought to enjoin Seifert from violating City Ordinances No. 277 and 386 of the City of Stuttgart which prohibited the erection of a frame building in a restricted district. The court upheld appellant's right to injunctive relief on the ground that the plaintiff "made a substantial showing of probable damages to his own and other adjoining properties . . ." even though it was urged ". . . that the ordinance prescribes criminal punishment, making violation a misdemeanor punishable by fine . . ."

In the *Karston* case, *supra,* where injunctive relief was upheld to prevent the commission of a crime, there was present the element of lack of adequate law enforcement but not the element of injury to property. Thus, on first impression, that case might appear to contradict the "two elements" rule we have just announced above, but a closer study shows such is not the case. There the court recognized the general rule as we have stated it, and then said: "The question then, is, does

the complaint here allege 'some other ground of equity jurisdiction, calling for injunction'." The court then found the "other ground" to be that, at common law, the maintenance of an open gambling house in violation of law was a public nuisance, and, as such, could be enjoined.

(b)   We do not agree with appellant that the evidence is insufficient to support the findings and judgment of the trial court. Several witnesses stated that their businesses, as grocerymen, were adversely affected by reason of the fact that grocery stores were kept open on Sundays. One witness said his business was thus affected to the extent of $1,000. All of appellees had made large investments in the grocery business, varying from $20,000 to $150,000. There was introduced no evidence to the contrary.

During the trial appellant objected to the court's rulings on several matters regarding the introduction and exclusion of testimony, but these matters are not listed in his "Points" nor are they discussed in his brief.

Affirmed.

Chief Justice HARRIS and Justice MILLWEE concur.