**The CITY OF HOUSTON, Appellant.**

**v.**

**FT. WORTH & DENVER RAILWAY CO. et al., Appellees.**

**No. 17997.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

June 11, 1981.

Rehearing Denied July 23, 1981.

Edward A. Cazares, Fred Spence, Houston, for appellant.

Wm. H. Tenison, Jr., Carla Powers Dykes of Andrews Kurth, Campbell & Jones, Houston, for appellees.

Before WARREN, DOYLE and EVANS, JJ.

WARREN, Justice.

This is a suit for the condemnation of land already dedicated to public use.

The City of Houston filed suit against the Railroad seeking a writ of possession, and alternatively, condemnation for street purposes, of certain land used by the Railroad for tracks and railroad yards. The land is owned by the Railroad in fee.

After a jury trial, the court entered judgment which awarded the City an easement and the Railroad the sum of $84,770 for expenses it would incur as a result of the road easement. Both parties have appealed. For clarity, the parties will be referred to as the City and the Railroad.

The City's points of error claim:

(1) That the court erred in requiring it to condemn the land required for the road easement, rather than granting it a writ of possession, and

(2) The court erred in submitting the damages issues to the jury and granting judgment on these issues because the damages were non-compensable in law.

The Railroad's points of error claim:

(1) It was entitled to judgment by virtue of the jury's answers to Special Issues 1 and 3, under the doctrine of "paramount importance," and the court erred in disregarding the jury's answers to these issues,

(2) That the jury's answers to special issues 1, 3, and 6, which were disregarded

by the court would support a finding that such taking is in violation of article I, 8, (Commerce Clause) of the United States Constitution, which prohibits state interference with interstate commerce, and (3) The court erred in failing to allow it to introduce evidence and to submit special issues for the recovery of the proper measure of damages for the taking of the property.

■ The City's first contention, that it is entitled to a writ of possession rather than being required to condemn the easement, is overruled. The right to cross a railroad's right-of-way with a road is a property right to be condemned, and for which the Railroad is to be compensated. *City of Houston v. Ft. Worth and Denver Railway Co.*, 561 S.W.2d 22 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n. r. e.); *Kansas, O. & G. Ry. Co. v. Grayson County*, 5 S.W.2d 542 (Tex.Civ.App.—Texarkana 1928, no writ).

■ The City next contends that the court erred in submitting the issues and basing a judgment on a jury award of damages which are non-compensable at law. We sustain these points of error. The damages issue complained of was as follows:

### Special Issue No. 4

What sum of money, if any, if paid now in cash do you find from a preponderance of the evidence would fairly and reasonably compensate the railroad for their expenses, if any, in connection with the following elements.

You are instructed that you shall consider the following elements of damage and none other:

Answer separately as to each, if any, in dollars and cents, if any.

| | ANSWER |
|---|---|
| (a) Installing relay track | $ 8,850. |
| (b) Installing full depth fabricated plank | 9,424. |
| (c) Installing fabric for crossing for drainage | 500. |
| (d) Installing surface correction on rail | 1,500. |
| (e) Construction walk and bridges | 2,500. |
| (f) Gates & signals | 62,000. |

Most, if not all, of the elements of damages submitted to the jury as above allowed compensation for items which are non-compensable because they are required to be done by the Railroad by law or ordinance.

In *Houston & T.C. Ry. Co. v. City of Houston*, 41 S.W.2d 352 (Tex.Civ.App.—Austin 1931, no writ), the court held that when land across a railroad right-of-way was taken for street purposes, the railroad was entitled to the diminished value for railroad purposes of the Railroad's exclusive use of land taken caused by its use for street purposes. It also specifically held that the railroad was not entitled to be compensated for changing a grade, plating a crossing, installing electric lights and crossing gates, for interference in switching operations, or for having to slow down trains for a crossing.

■ The City of Houston and the State of Texas, in the exercise of their police power, have the right to require a railroad as a franchisee to keep its premises in a condition calculated to insure the safety of its customers, its users and of the users of the streets which cross the track. The expenses of complying with these regulations must be borne by a railroad even though the expenses were directly caused by a street being imposed on an existing right-of-way.

■ The correct measure of damages for such a taking is:

... the difference between the value of the right to the exclusive use of the land in question for the purpose for which it was being used, and for which it was always likely to be used, and that value after the city acquired the privilege of participating in such use by the opening of a street across it, leaving the railroad tracks untouched.

*Chicago, Burlington & Quincy Ry. Co. v. City of Chicago*, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897); *Houston & T.C. Ry. Co. v. City of Houston, supra.*

We will next consider whether the Railroad is entitled to judgment decreeing that

the City take nothing by reason of the jury's answers to special issues 1 and 3. To properly consider the Railroad's contention, we must also consider special issue 2.

In special issue 1, the jury found that the taking by the City would materially impair the existing uses of those tracks by the Railroad.

In special issue 3, the jury found that there is another practical way that the proposed street crossing could be accomplished.

The City claims that it is entitled to judgment by reason of the jury's answer to special issue 2, which in effect found that the street crossing was of "paramount importance" to the public.

The Railroad claims that it is entitled to judgment by reason of the jury's answer to special issues 1 and 3.

■ The existing use is considered to be a public use. In the absence of express or implied legislation, the law does not authorize the condemnation of property already devoted to a public use which taking would practically destroy the existing use, unless the necessity be so great as to make the new use of paramount importance to the public and the purpose cannot be practically accomplished in any other way. *Sabine and E.T. Ry. Co. v. Gulf and I. Ry. Co.*, 92 Tex. 162, 46 S.W. 784 (1898).

Plainly stated, if a condemning authority seeks to condemn property already devoted to a public use, it may not do so if the effect of the taking would be to practically destroy the existing use, (1) unless the condemnor shows that its use is of paramount importance to the public, and (2) that its purpose cannot be accomplished in any other practical way. In our case the City had the right to cross the tracks unless the Railroad proved that such crossing would practically destroy the use which existed. Once the Railroad proved this, then the burden would be on the City to prove (1) paramount importance, and (2) that its purpose could not be accomplished in any other practical way.

■ We hold that neither party is entitled to judgment on these issues. Although the City obtained a finding of paramount importance, it failed to obtain a finding that its purpose could not be accomplished in any other practical way. This was fatal to its recovery under this theory. *Central Power and Light Co. v. Willacy County*, 14 S.W.2d 102 (Tex.Civ.App.—San Antonio 1929, no writ).

■ The Railroad contends that the jury's findings that the taking would "materially impair" is tantamount to a finding that the taking would "practically destroy" the existing use. In support of this contention the Railroad cites *Snellen v. Brazoria County*, 224 S.W.2d 305 (Tex.Civ.App.—Galveston 1949, writ ref'd n. r. e.) and *Texas Midland R.R. v. Kaufman County Imp. Dist. No. 1*, 175 S.W. 482 (Tex.Civ.App.—Dallas 1915, writ dism'd) wherein the courts, when discussing the doctrine used the term "materially impair". There is a great deal of difference between the two terms. World Book Dictionary (1979) defines the terms as follows:

*Materially*—considerably; greatly; substantially.

*Impair*—to make worse; damage; harm; weaken.

*Practically*—virtually; really; so far as the results will be; in effect.

*Destroy*—make useless; spoil; ruin; to put an end to; do away with.

By using a combination of any of the definitions above, it is apparent that materially impairing an existing use would be less onerous than practically destroying the use.

We hold that a finding that the taking would "materially impair" the existing use does not satisfy the requirement that the condemnee prove that the existing use would be practically destroyed, and that the answer to this issue will not support a judgment in favor of the Railroad.

■ The Railroad's point of error which complains that the trial court erred in failing to allow the Railroad to develop evidence and submit special issues for recovery of the proper measure of damages is sus-

tained. As mentioned previously, the measure of damages as stated by the court in *Chicago, Burlington & Quincy Ry. Co. v. City of Chicago, supra* and *Houston & T.C. Ry. Co. v. City of Houston, supra*, is the correct measure of damages, and the exclusion of evidence to support the submission of these issues was error.

■ The Railroad's remaining point of error alleging that the taking constituted a violation of the Commerce Clause of the United States Constitution is overruled. Although the taking might tend to restrain interstate commerce to a small degree, a similar restraint would occur if the cities or states were unable to provide access to the major interstate highways.

The Railroad has cited no case in which condemnation has been disallowed under this theory and we have found none.

Such takings have been approved by both federal and state courts in numerous cases wherein possibility of interference with interstate commerce was much greater than in our case. See 29A C.J.S., Eminent Domain § 78.

The judgment is reversed and the cause remanded. Costs are taxed equally between the City and the Railroad.